UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMES LICHTSINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-222 JTM |
| | ) | |
| CORRECTIONAL OFFICER HILE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On February 28, 2007, Defendant Correctional Officer Hile (Hile) filed a motion to exclude Plaintiff James Lichtsinn's (Lichtsinn) expert, Dr. Stephen Hatch, M.D. (Dr. Hatch). On March 13, 2007, Lichtsinn filed his response in opposition to this motion. On March 19, 2007 Hile filed a reply and an objection to testimony. On May 24, 2007, this Court held a hearing on Hile's motion in which the Court heard arguments from both parties and both parties had an opportunity to present additional evidence. For the following reasons, Hile's motion [Doc. No. 31] is **GRANTED**.

**I.     RELEVANT BACKGROUND**

In 1991, Lichtsinn was involved in a motorcycle accident that resulted in the amputation of his left arm. Subsequently, to help control the pain that he experienced at the site of the amputation, Lichtsinn had an electrical spinal stimulation device implanted in his back. In March 2005, while he was incarcerated at the Westville Correctional Facility in Westville, Indiana, Lichtsinn was involved in an altercation with Hile. During this encounter, Lichtsinn alleges that Hile grabbed him by his left shoulder and spun him around causing the lead in the stimulation device to move and to ultimately fail.

In January 2006, after he was released from the correctional facility, Lichtsinn was referred to Dr. Hatch who surgically replaced the electrical lead and the battery in the stimulation device.  Dr. Hatch will testify that the lead in Lichtsinn's spinal stimulation device had moved and that quite often trauma causes leads to move.

Hile objects to Dr. Hatch's testimony for two reasons.  First, Hile argues that his testimony should be excluded as the result of Lichtsinn's failure to observe the disclosure requirements for experts outlined in Fed. R. Civ. P. 26(a)(2).  Additionally, Hile argues that Dr. Hatch's proffered testimony does not satisfy the admissibility standards set forth in F.R.E. 702 and Daubert.  This Court may rule on Hile's motion pursuant to its referral order and 28 U.S.C. § 636(b)(1)(A).

**II.    FED. R. CIV. P. 26(2)(B)**

Fed. R. Civ. P. 26(2)(B) deals with the disclosure of expert testimony and provides:

> [D]isclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis for the reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the proceeding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition with in the preceding four years.

(emphasis added).  While Lichtsinn properly disclosed Dr. Hatch as an expert, Hile argues he has failed to completely comply with Fed. R. Civ. P. 26(a)(2)(B).

In the present case, Lichtsinn provided Hile with a letter from Dr. Hatch.  In that letter Dr. Hatch expresses some of his opinions.  While the letter expresses some of Dr. Hatch's

2

opinions, the letter is void of the qualifications of Dr. Hatch, publications, compensation, or prior testimony.  However, Hile indicates he received a curriculum vitae of Dr. Hatch along with his fee for assisting Lichtsinn after seeking leave from this Court.  Hile does not contend that Lichtsinn failed to submit a report.  Instead, Hile contends that Lichtsinn's report does not sufficiently disclose all of Dr. Hatch's opinions as required by Fed. R. Civ. P. 26(a)(2)(B).  Specifically, Hile argues that Dr. Hatch opined that Lichtsinn's lead had moved, but he offered no opinion why it moved.[1]  This Court assumes, then, that Hile is suggesting that any of Dr. Hatch's opinions that were not disclosed should be struck pursuant to Fed. R. Civ. P. 37(c)(1).

Although Dr Hatch's written opinions are not very detailed, it appears that they have satisfied the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B).  Hile had notice that Dr. Hatch was Lichtsinn's expert and Hile had notice of Dr. Hatch's general opinions.  The breadth and foundation for his opinion or opinions should have been fully explored at his deposition.  Lichtsinn's failure to provide a more detailed report, as Hile suggests was required, was harmless.[2]  Absent prejudice, and Hile articulates none, there simply is no basis under Fed. R.

---

[1] Also, Hile argues that Dr. Hatch should not be allowed to testify regarding the stimulator device's characteristics (P's Reply 4).  At this point, this Court can only speculate if Dr. Hatch will offer such testimony.  Dr. Hatch offers no opinion regarding any expertise regarding the stimulator device's characteristics.  Also, Lichtsinn indicates that Dr. Hatch will only testify regarding the issue of causation.  Consequently, this Court cannot rule on a hypothetical situation.  Hile's objection should be raised when and if Dr. Hatch attempts to offer expert testimony regarding the stimulator device's characteristics.

[2] Fed. R. Civ. P. 37(c)(1) states in part, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Civ. P. 37(c)(1) to exclude Hatch's opinion for a disclosure violation of Fed. R. Civ. P. 26(a)(2)(B).

In summary, because Hile has failed to articulate any prejudice and because Lichtsinn presented a report where Dr. Hatch covers causation theories, this Court cannot agree that exclusion is appropriate under Fed. R. Civ. P. 37(c)(1) for failure to comply with Fed. R. Civ. P. 26(a)(2)(B).  However, this Court must still determine whether Dr. Hatch satisfies F.R.E. 702 and Daubert.

**III.   F.R.E. 702**

Fed. R. Evid. 702 states as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 has liberalized the standard for qualifying as an expert witness.  Wilson v. City of Chi., 6 F.3d 1233, 1238 (7th Cir. 1993).  As a threshold matter, courts must examine whether 1) the expert will testify to valid scientific knowledge, and 2) whether that testimony will assist the trier of fact in understanding or determining a fact in issue.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993); Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000) (holding that "the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case").  In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999), the Supreme Court held that this inquiry must be taken in all matters relating to expert testimony and not only in those that contain scientific testimony.

4

Courts must determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusion is reliable.  See Ammons v. Aramark Uniform Serv.s, Inc., 368 F.3d 809, 816 (7th Cir. 2004).  A witness does not need to put forth testimony in a scientific or technical manner to be considered an expert.  Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000).  Experts can be qualified to testify based upon personal experience and knowledge, so long as the experience and knowledge is reliable.  Kumho Tire, 526 U.S. at 150; Smith, 215 F.3d at 718; Tuf Racing, 223 F.3d at 591.  A court should examine the full range of practical experience and technical training, as well as examine the methodology used in reaching a conclusion when deciding whether an expert is qualified to testify.  Smith, 215 F.3d at 718.  However, offering only a bottom line conclusion does not assist the trier of fact and should not be admitted.  Zenith Elec.s Corp. v. WH-TV Broadcasting Corp. 395 F.3d 416, 420 (7th Cir. 2005); Lennon v. Norfolk and Western Ry. Co., 123 F.Supp.2d 1143, 1147 (N.D. Ind. 2000).

A district court must act as a "gatekeeper" to ensure that any and all expert testimony or evidence admitted is not only relevant but reliable.  Ramsey v. Consolidated Rail Corp. 111 F.Supp.2d 1030, 1036 (N.D. Ind. 2000).  It is not the responsibility of the trial court to determine whether the expert's opinion is correct.  Smith, 215 F.3d at 719.  The factual underpinnings of the analysis and the correctness of the conclusions are matters to be determined by the trier of fact.  Id. at 718.

A.   Sufficient Facts or Data

F.R.E. 702 is flexible and permits a witness to be qualified as an expert if she is qualified by knowledge, skill, experience, or education.  United States. v. Conn., 297 F.3d 548, 555 (7th

5

Cir. 2002).  A combination of experience and inspection of hard evidence or records may be sufficient to meet the first prong of F.R.E. 702.  Id.  Hile received Dr. Hatch's curriculum vitae and concedes that Dr. Hatch's medical experience and knowledge of the particular spinal stimulator device at issue in this case is extensive.  Even though this Court does not have Dr. Hatch's curriculum vitae before it, this Court will assume that Dr. Hatch has sufficient skill and experience to satisfy the first prong of F.R.E. 702 because Hile concedes as much.

  B.  Reliable Principles and Methods

However, possessing requisite credentials alone is not enough to render expert testimony admissible.  Fuesting v. Zimmer, Inc., 421 F.3d 528, 535 (7th Cir. 2005).   This Court must also analyze whether Dr. Hatch utilized reliable principles and methods pursuant to F.R.E. 702 to ensure that Dr. Hatch offers more than simply his subjective belief or speculation, which is a bottom line opinion.  Zenith Electronics Corp., 395 F.3d at 420.  In fact, the focus of this Court's inquiry must be solely on the principles and methodology, not on the conclusions they generate.  Chapman v. Maytag Corp., 297 F.3d 682, 687 (7th Cir. 2002). Courts use four non-exclusive factors to help them determine reliability of a method or process.  They are: 1) the extent to which the theory has been or can be tested; 2) whether the theory has been subjected to peer review and/or publication; 3) the theory's known or potential rate of error; and 4) the general acceptance of the theory in the relevant scientific or professional community.  Id.

Dr. Hatch's theory is that trauma causes leads on spinal cord stimulators to migrate..  Dr. Hatch states:

> All I can say with a reasonable degree of medical certainty is that his lead had moved. . . .
> Leads migrate for various reasons.  Quite often it is a fall or trauma.  Sometimes we
> never find the cause.

(Def.'s Ex. A).  However, this is the extent Dr. Hatch's opinion.  Dr. Hatch does not indicate how he arrives at this opinion.  Rather, it appears he relied solely on his observations and medical experience.  "Personal observation is not a substitute for a scientific methodology and is insufficient to satisfy Daubert's most significant guidepost."  Chapman, 297 F.3d at 688.  He does not purport to have conducted any scientific tests, experiments, or clinical studies to explain his conclusion that spinal stimulator device leads move more often as the result of trauma.  Dr. Hatch does not even indicate whether he has extensive experience with repairing leads that have moved as a result of trauma.  Merely discussing causation theories without testing or further experimentation to verify the theories, or to discount other theories, does not constitute a valid method sufficient to support an expert opinion.  Fuesting, 421 F.3d at 534-35; Chapman, 297 F.3d at 688.

Lichtsinn argues that Dr. Hatch discounted other theories.  Specifically, during his deposition Dr. Hatch ruled out the possibility that Lichtsinn's manipulation of the device with a magnet did not cause the lead to move (P's Ex. B, 14-15).  However, Dr. Hatch, again, merely indicates he does not believe that Lichtsinn's manipulation with a magnet would cause the lead to move.  Again, Dr. Hatch appears to base this opinion on his own personal observations.  Dr. Hatch does not indicate what tests, experiments, clinical studies, or other evidence generates this conclusion.  In essence, Dr. Hatch's discounting of other theories is as insufficient as the support for his main theory.

In addition, Dr. Hatch does not contend that his conclusion, that leads move because of trauma, has been subjected to peer review through publication.  Any reasonable expert would examine the literature of his theory before presenting it.  O'Conner v. Commonwealth Edison

7

Co., 13 F.3d 1090, 1107 (7th Cir. 1994).  However, Dr. Hatch does not indicate if any literature supports his theory that trauma caused Lichtsinn's lead to migrate.

Last, Dr. Hatch has not indicated nor provided any evidence of whether his theory is generally accepted in the field of medicine.  Lichtsinn has also not provided any evidence that Dr. Hatch's theory of causation is accepted in the medical community or that doctors generally derive theories of causation about lead movement by mere observation.  Simply put, there is nothing to suggest to this Court that Dr. Hatch's theory or method is generally accepted in the medical field.

Although there may exist scientific evidence to support Dr. Hatch's conclusions, Lichtsinn has not made this Court aware of such evidence.  Dr. Hatch's failure to disclose the methodological basis for his opinion severely undermines the reliability of his testimony.  "The courtroom is not the place for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it."  Rosen v. Ceiba-Geigy Corp., 78 F.3d 316, 320 (7th Cir. 1996).  Dr. Hatch's conclusions are too subjective, unsupported, and speculative to be considered reliable and his opinion is only a "bottom line" opinion, based solely on his authority, which insufficient to satisfy the admissibility requirements of F.R.E. 702.  Zenith Electronics Corp., 395 F.3d at 420.

Consequently, because there is no indication that Dr. Hatch formulated his opinion solely of his own observations, and because there is no indication of whether his opinion is generally accepted in the field of medicine or supported by professional literature, this Court concludes that Dr. Hatch did not rely on reliable principles or methods.  Essentially, Dr. Hatch's opinion is merely a "bottom line" and as such, does not satisfy the requirements of F.R.E. 702.  As a result,

his opinion is not based on reliable scientific knowledge that assists the trier of fact.  Hile's motion to exclude Dr. Hatch is **GRANTED**.

**IV.   CONCLUSION**

Because this Court concludes that Dr. Hatch's testimony is neither reliable nor relevant, it does not satisfy the admissibility requirements of F.R.E. 702 and <u>Daubert</u>.  Consequently, Hile's motion to exclude Dr. Hatch [Doc. No. 31] is **GRANTED**.

**SO ORDERED.**

Dated this 25th Day of May, 2007.

>                        s/Christopher A. Nuechterlein
>                        Christopher A. Nuechterlein
>                        United States Magistrate Judge