UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **JAMES LICHTSINN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. 3:06 CV 222 |
| | ) |
| **CORRECTIONAL OFFICER HILE** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Before this court for resolution is defendant Correctional Officer Hile's motion for summary judgment. Defendant filed a memorandum in support of the motion. Plaintiff James Lichtsinn filed a response in opposition, and defendant replied. For the reasons that follow, the court **GRANTS** summary judgment in favor of defendant on all of plaintiff's claims.

## I. BACKGROUND[1]

In 2005 defendant Correctional Officer Hile was on duty at the Westville Correctional Facility in Michigan City, Indiana where plaintiff James Lichtsinn was incarcerated. Defendant was one of a few prison personnel patting down selected inmates as they left the chow hall. During a typical pat down, an officer feels an inmate's clothing and person from shoulders to ankles searching for contraband. Pat-down searches are commonplace at the Westville Correctional Facility, particularly after

---

[1]The facts in this section are either undisputed or, when in dispute, resolved in favor of the plaintiff. *See Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999) (noting that during summary judgment the court construes all facts in the light most favorable to the nonmoving party).

meals as officers try to prevent inmates from taking food or other items from the facility's chow hall. (Def.'s Mem. Law in Support of Mot. Summ. J. at 2-3 [hereinafter Def.'s Mem.]; Pl.'s Br./Mem. in Resp. at 2-3 [hereinafter Resp.].)

On March 31, 2005 plaintiff was with a group of inmates exiting the chow hall when defendant selected plaintiff for a pat down. Apparently unaware that he had no left arm, defendant selected plaintiff after noticing one of plaintiff's sleeves tucked into his pocket. Plaintiff submitted to the pat down but pulled away and verbally protested when he felt defendant press his pelvic area into plaintiff's backside. (Def.'s Mem. at 2; Def. Hile's Answers to Pl.'s First Set of Interrogs. at 4; Resp. at 3.) Plaintiff alleges, "[defendant] was real close and he had his private against my butt . . . and he was pressing." (Dep. of James F. Lichtsinn at 36, 59 [hereinafter Lichtsinn Dep.].) Defendant reiterated his search order to which plaintiff initially complied, but plaintiff pulled away a second time when, he alleges, defendant again pressed against him (Resp. at 3.) Plaintiff then turned to leave saying, "I'm not going to [expletive] stand for this." (Lichtsinn Dep. at 36.) According to plaintiff, as he turned to leave, defendant said, "I ain't through with you yet, bitch," and grabbed and turned plaintiff by the stump area near his amputation site. (Lichtsinn Dep. at 38-39, 40.) Plaintiff alleges he felt immediate pain in his back, shoulder, and neck. Just after the turn another officer, a supervising captain who overheard the commotion, interceded and sent plaintiff walking to his dormitory without further search. Back at his dorm, plaintiff contacted the dorm officer and requested medical attention for his pain. He went to the facility's medical station

where, after a brief exam and some questioning, plaintiff was given pain medication. (Lichtsinn Dep. at 39-42; Resp. at 3.)

Plaintiff claims the incident brought on reoccurring physical pain and emotional hardship.[2] On February 24, 2006 plaintiff filed suit in La Porte Superior Court, seeking compensatory and punitive damages against defendant. (Compl. at 1-2.) Plaintiff alleges that defendant used excessive force during the exchange and in doing so deprived plaintiff of rights guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution as well as what he only specifies as "rights under the Indiana Constitution." (Compl. at 2.) Defendant filed a notice of removal to bring the case before this court and now moves for summary judgment on all of plaintiff's claims. (Notice of Removal at 1; Def.'s Mot. for Summ. J. at 1.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the

---

[2]Plaintiff had planned to proceed on the theory that when defendant grabbed and turned plaintiff, he dislodged plaintiff's spinal stimulator, a surgically implanted device that helped plaintiff control pain associated the amputation. (*See* Pl.'s Resp. to Def.'s Mot. to Exclude Pl.'s Designated Expert at 2-3.) Plaintiff underwent surgery to fix the malfunctioning device shortly after his release from the correctional facility in January 2006. (Order of May 25, 2007 at 2.) Plaintiff was forced to abdicate his theory, however, after the court, in an order from Magistrate Judge Nuechterlein, granted defendant's *Daubert* challenge and excluded testimony from Dr. Hatch, the surgeon who performed the corrective surgery. (*See id.* at 2, 9; Pl.'s Resp. at 9.)

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. PROC. 56(c)). Once the moving party has met its burden, the nonmovant may not rest upon mere allegations. When confronted with a motion for summary judgment, "[a] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 561 (7th Cir. 2005). When considering a motion for summary judgment, the court must view the record and all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

**III. DISCUSSION**

The Eighth Amendment's Cruel and Unusual Punishments Clause protects those convicted of crimes from excessive force and sets boundaries on imprisonment conditions. *See Whitley v. Albers*, 475 U.S. 319-320 (1986). In excessive force cases, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In conducting this inquiry, a court must examine a variety of factors including "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (citing *Hudson*, 503

4

U.S. at 7). While significant injury is not required, an excessive force claim cannot be predicated on a *de minimis* use of force. *Id.* (citing *Hudson*, 503 U.S. at 9-10).

    A. *The Force Defendant Applied Was De Minimis*

"Not every push or shove by a prison guard violates a prisoner's constitutional rights." *DeWalt*, 224 F.3d at 619 (citing *Hudson*, 503 U.S. at 9). Rather, "the quantum of force required for a constitutional violation is that which is repugnant to the conscious of mankind." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (citing *Hudson*, 503 U.S. at 10). Plaintiff alleges that defendant used excessive force when, after plaintiff disengaged the search and turned to walk away, defendant "grabbed [p]laintiff by the shoulder of the amputated arm," and "spun the plaintiff around . . . so hard the [p]laintiff almost lost his balance." (Resp. at 3.) This alleged brief and isolated contact is the sort of *de minimis* force that does not constitute a constitutional deprivation. *Compare Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) (holding that pouring a bucket of water on prisoner and causing the bucket to hit prisoner in the head was *de minimis*) *and Dewalt*, 224 F.3d at 619-620 (holding that defendant's one-time use of force to shove prisoner against a door frame and bruise him was *de minimis*) *with Hudson, 503 U.S. at 10* (ruling that correctional officers who punched and kicked an inmate while holding him down, causing bruises, swelling, loosened teeth, and a cracked dental plate applied more than *de minimis* force) *and Thomas v. Stalter*, 20 F.3d 298, 301-302 (7th Cir. 1994) (holding that punching a prisoner in the mouth with a closed fist while prisoner was held down by five other officers was not *de minimis*).

    The confrontation between plaintiff and defendant was their first and only interaction. Plaintiff concedes he was not knocked over and that he was immediately

5

released after defendant had turned him. (Lichtsinn Dep. at 28, 36-37, 38, 44.) Plaintiff's relatively minor injuries further belie any assertion that the force was more than *de minimis. See Lunsford v. Bennett*, 17 F.3d at 1582 (explaining that the degree of injury is relevant to determining whether the force used was excessive and a minor injury supports finding that the force was *de minimis* and not intended to cause pain or injury). Plaintiff had no bruising, bleeding or other objective indicia of injury; he gave no indication that he was injured immediately after the incident and concedes he walked back to his dorm under his own power. (Lichtsinn Dep. at 39, 41). Even when viewed in a light most favorable to plaintiff, his allegations simply do not amount to an objectively significant enough deprivation to survive summary judgment.

    *B. Plaintiff's Claim Lacks the Subjective Element*

Plaintiff's claim also lacks support for the subjective element necessary to show an Eighth Amendment violation. *See Lunsford,* 17 F.3d at 1579 (articulating the necessary components for an Eighth Amendment claim). To succeed on his claim, plaintiff must prove not only a significant deprivation, but also that defendant acted intending to cause harm rather than to maintain or restore discipline. *See id.* at 1581. Plaintiff recognizes that defendant had a legitimate reason to conduct the initial search, but alleges that "by the time of the [d]efendant's use of force . . . [d]efendant had already completed his search" and thus "had no legitimate penological reason to subject the [p]laintiff to any force." (Resp. at 7.) Plaintiff also notes that defendant grabbed him by the area near his amputated arm, a point of particular vulnerability and sensitivity. (Resp. at 8.)

Contrary to plaintiff's claims, the record simply does not support his contention that defendant had completed his search when plaintiff disengaged. Plaintiff ignores, moreover, defendant's legitimate interest in ensuring that inmates fully comply with ordered pat downs until they are properly dismissed. Plaintiff concedes that twice he pulled away from defendant and terminated the encounter by declaring "I'm not [expletive] letting you shake me down in that way." (Lichtsinn Dep. at 33.) Plaintiff's defiance took place in plain view of hundreds of other prisoners, all of whom were supervised by, at most, seven guards. (Lichtsinn Dep. at 29-30.) Left unchecked, plaintiff's conduct had serious potential to undermine legitimate prison authority.

Plaintiff alleges that defendant pressed against him in a sexual manner during the frisk, but fails to articulate with any clarity the allegation's legal significance. He does not assert that the alleged sexualized conduct was itself harassment or an assault violative of the Eighth Amendment,[3] nor does he articulate any legal standard under

---

[3] The Seventh Circuit Court of Appeals has held a harassing search of a prisoner may violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003). However, it is fairly clear that even had plaintiff raised the issue, the sexualized touching he alleges does not rise to the level of a constitutional deprivation. *Compare Calhoun*, 319 F.3d at 940 (holding that inmate's allegation that during a strip search in front of female guards the guards made explicit gestures and forced him to perform sexually provocative acts, and that female guards were invited spectators, was sufficient to state an Eighth Amendment claim) *with Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir. 1997) (holding allegations that a corrections officer touched an inmate's penis and pressed up against him in a sexual manner were not sufficient to state an Eighth Amendment claim because "isolated episodes of harassment and touching . . . do not involve a harm of federal constitutional proportions as defined by the Supreme Court") (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1970)) *and Berryhill v. Schriro*, 137 F3d 1073, 1076 (holding that inmate failed to state an Eighth Amendment claim against prison maintenance employee where "the brief touch to his buttocks lasted mere seconds, [and] it was not accompanied by any sexual comments or banter").

7

which duress might justify an inmate's refusal to comply with a prison official's orders. Rather, he suggests "[defendant's] further intentions for [plaintiff] can be surmised based on his offensive statements and conduct that preceded the use of force." (Resp. at 7 n.2.) Plaintiff concludes that defendant, presumably angered by plaintiff's resistance, grabbed and turned plaintiff "to punish [him], and to show this inmate who the alpha dog was." (Resp. at 11.)

First, other than plaintiff's own bald, unsupported assertion that "the officers are not allowed to get body to body [during a pat down]," the record has no indication that the contact plaintiff alleges is proscribed or even atypical during a pat down. (*See* Lichtsinn Dep. at 34.) Further, the only force plaintiff alleges was an Eighth Amendment violation was the contact after the frisk and plaintiff has offered nothing to dispel defendant's valid justification: To confront an inmate's direct, public challenge to prison authority. *See Whitley v. Albers*, 475 U.S. at 321-322 (holding that actions taken by prison personnel responding to conflict are entitled to deference). Given the pressing need to maintain prison order and discipline, and the relatively minor force defendant employed throughout the incident, a rational jury could not conclude that defendant acted to wantonly inflict pain rather than to maintain order. *See Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001).

In short, defendant is entitled to summary judgment because plaintiff's allegations show neither the subjective nor objective elements necessary to maintain his Eighth Amendment claim. *See Lunsford*, 17 F.3d at 1574 (holding that "[i]f either the objective or subjective portion is not satisfied, plaintiffs cannot make out an Eighth Amendment claim").

8

*C. Plaintiff Abandoned His State Law Claim*

Plaintiff's complaint also includes a vague allegation that defendant violated plaintiff's "rights under the Indiana Constitution." (Compl. at 2.) Now that plaintiff's federal claim has been dismissed and only his state claim remains, the court has discretionary jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c). When deciding whether to exercise discretionary jurisdiction over pendent state-law claims, the court considers and weighs judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Because dismissal is clearly warranted without reaching the merits of the state law claim and because it would be unfair and inefficient for defendant to have to litigate the issue again, the court finds this an appropriate case to exercise discretionary jurisdiction. *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994) (explaining that the court should not relinquish jurisdiction when the correct disposition of a state law claim is clear and can be decided without addressing any difficult issues of state law). In his response to defendant's summary judgment motion plaintiff makes no mention of the state law claim he asserted in his complaint despite defendant's extensive discussion of the issue in his motion for summary judgment and supporting memorandum of law. (*See* Compl. at 2; Def.'s Mot. for Summ. J. at 1; Def.'s Mem. at 14-15.) By failing to raise the issue, plaintiff has abandoned his state law claim.[4]

---

[4]The court also notes that were it to abdicate jurisdiction over plaintiff's state law claim, it would encourage litigation gamesmanship: Plaintiffs could allege vague state-law claims in their complaint, elicit defendant's arguments during summary judgment, and then remain silent on the state claims in their responses so that if the court dismisses all federal claims, plaintiff could still pursue litigation in state court in what would amount to a second bite at the litigation apple.

*See Palmer v. Marion County*, 327 F.3d 588, 597-599 (7th Cir. 2003) (explaining that claims not addressed in a summary judgment opposition brief are abandoned).

**IV. CONCLUSION**

For the foregoing reasons, the court **GRANTS** defendant's motion for summary judgment on all of plaintiff's claims. The court directs the clerk to **ENTER THIS FINAL JUDGMENT**:

Judgment is entered in favor of defendant and against plaintiff denying all relief on all of plaintiff's claims.

**SO ORDERED.**

**Entered** October 29, 2007

s/ James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT